EDWIN G. LESLIE, Appellant, *v.* THE CITY OF ST. LOUIS AND FRANCIS ROMER, Respondents.

1. *Revenue* — *Land commissioner, proceedings before for opening street* — *Assessments against adjoining property-owners* — *Property of can not be sold unless a bargain could not be made with owner of property sought to be taken* — *Injunction a proper remedy in such cases.* — To entitle the city of St. Louis to collect from adjoining property-owners the amount of assessments taxed against them for the opening of streets, under the city charter

Leslie v. The City of St. Louis et al.

(Sess. Acts 1867, p. 72, § 2), it must appear that before instituting proceedings before the land commissioner for the condemnation of the property to be taken, an attempt was made with the owner thereof to effect an agreement as to the terms of purchase. The effort to make such agreement was an imperative obligation and constituted a condition precedent to the exercise of the right of eminent domain by the city. And the duty of proving the failure to agree devolved upon the city. The power to take private property for public use, without the consent of the owner, is in derogation of the rights of the citizen, and can only be justified on grounds of absolute necessity; and, when exercised, the power conferring the right must be strictly adhered to and complied with.

And where no such agreement is shown to have been made, the adjoining property-owner may restrain the city, by injunction, from selling his land to satisfy such assessment. Courts of equity never allow relief by injunction to prevent the sale of personal property; but where real property is about to be sold by a municipal corporation for the payment of taxes or assessments, equity will interpose. The distinction lies in the fact that in the one case a full and complete remedy is furnished at law, while in the other a cloud is about to be cast over a land title, and the court interferes to prevent it.

### *Appeal from St. Louis Circuit Court.*

*Shepley*, *Denison* and *Allen*, for appellant.

I. This case comes within the equitable jurisdiction of the court, and the appellant is entitled to equitable relief. The threatened sale, though void, being under color of legal proceedings, would cast a cloud upon appellant's title to the land, and the courts will interfere to prevent it. (Lockwood v. City of St. Louis, 24 Mo. 20; Fowler v. City of St. Joseph, 37 Mo. 240; Pease v. City of Chicago, 21 Ill. 500; Uhrig v. The City of St. Louis, 44 Mo. 458.)

II. Statutes creating corporations, and authorizing them to divest the title to real property by proceedings *in invitum*, should be strictly construed. (Lind v. Clemens, 44 Mo. 540; Reitenbaugh v. Chester Valley R.R. Co., 21 Penn. 100; Vail v. Morris R.R. Co., 1 Zabr. 189; Fowler v. City of St. Joseph, 37 Mo. 238; Sedgw. Stat. and Const. Law, 338 *et seq.*; 1 Dutch. 309.)

III. The appellant has a right to object to all irregularities in the manner of exercising the power of eminent domain, because he is sought to be charged with payment of assessed benefit, and

his burden has been thereby increased. (In the matter of 39th st., 1 Hill, N. Y., 191; Gilbert v. Columbia Turnpike Co., 3 Johns. 107; Dyckman v. The Mayor of New York, 5 N.Y. 434.)

IV. An effort to make an agreement with the owners of the land to be taken for public use, satisfactory to the city council, is a condition precedent to the right of the city to condemn the property, or of the land commissioner to commence these proceedings. (Sess. Acts 1867, pp. 72, 73, art. VIII, §§ 3, 4, 5; Lind v. Clemens, 44 Mo. 540; Reitenbaugh v. Chester Valley R.R. Co., *supra;* 1 Zabr. 189; 3 Johns. 107; 5 N. Y. 434; 7 Barb. 498; Abb. Dig. 317, §§ 26–8.)

V. The proceedings must affirmatively show that this precedent condition has been complied with, and no presumption is to be indulged in. (Lind v. Clemens, *supra.*)

*Reber*, City Counselor, for respondents.

I. This being an injunction bill, the plaintiff must affirmatively show that the law was not complied with, to his detriment; and it is not sufficient to aver that the verdict does not show certain facts, unless by law those facts must appear in the verdict.

II. The ordinance authorizing the judgment on the verdict is warranted by the statute. (Sess. Acts 1867, p. 72, art. VIII, § 2.) And if not, then the verdict must stand as a judgment or assessment, on which execution or warrant may issue. It would be strange if an assessment could be made and yet could not be collected.

III. There was in this case no necessity of making or attempting to make an agreement with the owners of land before proceeding to condemn. The word *can* in the act must be read *shall.*

IV. If the plaintiff has any remedy it is by law — by *certiorari* or trespass.

WAGNER, Judge, delivered the opinion of the court.

The appellant's bill prayed for an injunction to restrain the city of St. Louis from selling certain real estate which had been assessed for benefits upon a pretended condemnation before the

land commissioner. A demurrer being interposed and sustained by the court, the allegations in the petition must be taken as confessed. But it is not deemed necessary to examine all the charges, as the two leading questions are decisive. These are: first, whether, before instituting proceedings for the condemnation of the property, it was necessary that an attempt should be made with the owner to effect an agreement in reference thereto; and second, whether injunction in the present case is the appropriate remedy.

The city charter declares that whenever the city council shall provide by ordinance for the establishing, opening, widening or altering any street, avenue, alley, wharf or public square, or route for sewer, and it becomes necessary for that purpose to take private property, and no agreement can be made with the owner or owners thereof, to the satisfaction of the city council, just compensation shall be paid therefor, to the person or persons whose property is so taken, which the land commissioner shall cause to be ascertained by a jury of six disinterested freeholders of the city, etc. (Sess. Acts 1867, p. 72, § 2.)

As no effort was ever made to agree upon any terms with the appellant, who owned the property, and the land commissioner proceeded in total disregard of this provision, we must determine whether it is merely directory or whether it is imperative and constitutes a condition precedent to the exercising the right of eminent domain by the city.

. Perhaps no principle has been oftener proclaimed by the courts, or is more firmly established in the very ground-work of the law, than that whenever, in pursuance of authority, the property of an individual is to be divested against his will, there must be a strict compliance with all the provisions of the act authorizing such a proceeding.

The power to take private property for public use without the consent of the owner is in derogation of the rights of the citizen, and can only be justified on grounds of absolute necessity; and, when exercised, the power conferring the right must be strictly adhered to and complied with. It is no answer to say that certain things in a given enactment, conferring the authority, do not

appear to be essential. Everything is essential which the law has said should be done before this high prerogative right can be carried out and enforced.

Where the law relating to roads in St. Louis county authorized the seizure of material belonging to individuals for road purposes, "when no private bargain could be made on fair terms," this court held that under the provisions of the enactment the County Court could not authorize a contractor for building a public road to divest the owner of his property for such a purpose when the proof before it failed to show any attempt to make a bargain with the owner. (Lind v. Clemens, 44 Mo. 540.)

So, where the act in Pennsylvania regulating railroad companies provided that if the companies could not agree with the owner or owners of property for the compensation proper for the damages done or likely to be done, or sustained by the owner or owners, then the court should appoint viewers to meet and decide upon the amount of damages and make their report, it was decided that there was no right to petition for the appointment of viewers until an effort had been made to agree upon terms of compensation. (Reitenbaugh v. The Chester Valley R.R., 21 Penn. St. 100.)

In New York, where the statute authorized the exercise of the power in cases where the commissioners and owners disagreed as to the amount of compensation, the court declares that the Legislature manifestly intended to give the owner the benefit and opportunity of a voluntary sale, and required the other party to make a fair and honest effort to purchase the land of him before commencing proceedings to take it adversely. Therefore the disagreement of the parties as to the amount of compensation was a material requirement of the statute and an essential prerequisite to the exercise of jurisdiction in the premises. (Dyckman v. The Mayor, etc., 1 Seld. 434; Gilbert v. Columbia Turnpike Co., 3 Johns. Cas. 107.)

The act provides that when no agreement can be made with the owner or owners of the property to the satisfaction of the city council, then the land commissioner shall cause the amount to be ascertained by a jury of six disinterested freeholders. The failure

of the parties to agree is the essential prerequisite, and without it the land commissioner has no jurisdiction to proceed. The duty of proving the disagreement devolves upon the city, for the rule is that the party who claims title under the exercise of the right of eminent domain must show affirmatively that the requirements of the statute have been complied with.

The evident intention of the Legislature was that the owner should have the right and opportunity to dispose of his property for a just and fair compensation, before proceedings should be instituted to deprive him of it against his will. This consideration he is entitled to, and it was not designed to deny him this right. The plain language imports this, and to hold otherwise would do violence to its meaning and injustice to the citizen.

The next question is, can the party claim equitable relief and pursue his remedy by the process of injunction? In cases like this the prior adjudications of this court have decided the question in the affirmative. Courts of equity never allow relief by injunction to prevent the sale of personal property, but where real property is about to be sold by a municipal corporation, for the payment of taxes or assessment, equity will interpose. The distinction lies in the fact that in the one case a full and complete remedy is furnished at law, while in the other a cloud is about to be cast over a land title, and the court interferes to prevent it. (Lockwood v. City of St. Louis, 24 Mo. 20; Fowler v. City of St. Joseph, 37 Mo. 228.) Wherefore the judgment must be reversed and the cause remanded. Judge Currier concurs. Judge Bliss, being interested in the question, expresses no opinion