CHARLES H. PARKS *et al.*, Respondents, v. THE
PEOPLE'S BANK OF DE SOTO *et al.*, Appellants.

St. Louis Court of Appeals, May 8, 1888.

1. EQUITY—INJUNCTION IN FAVOR OF EQUITABLE TITLE.—One who
has purchased land before the date of a judgment against his
vendor, taking only a memorandum of the purchase and acquiring
no conveyance until after the rendition of the judgment, may
have injunction to restrain an execution sale under the judgment.
Such a case is distinguishable from that of a purchaser who holds
an unrecorded deed at the time of the judgment, and to whom
the relief will be denied.

2. EQUITY—MULTIPLICITY OF SUITS.—Where the plaintiffs, if com-
pelled to defend their title in an action at law against a purchaser
under the execution, would successfully rely on the same facts
which they here urge for equitable relief, it is a proper exercise of
equity jurisdiction to grant the relief sought, in order to prevent a
multiplicity of suits.

3. STATUTE OF FRAUDS—SUFFICIENCY OF MEMORANDUM.—Where the
answer admits that the lands levied on are the lands described in
the petition, and were inherited by the vendor from his father, it
cannot be objected that the memorandum offered in evidence,
which describes the lands as having been left to the vendor by his
father, is insufficient under the statute of frauds. The description
substantially identifies the property.

4. PER THOMPSON, J., DISSENTING:—The holder of a memorandum
of purchase at the date of a judgment against his vendor stands
in no better position than if he held an unrecorded deed, instead;
and, according to the current of Missouri decisions, he would not,
in the latter case, be entitled to the relief here sought.

APPEAL from the Jefferson Circuit Court, Hon.
JOHN L. THOMAS, Judge.

*Affirmed, and certified to the Supreme Court.*

JOS. P. TATUM and THOMAS & HORINE, for the
appellants : Sales *in invitum* are sometimes enjoined on
the ground of casting a cloud on title, but that reason
is not set up in this case, nor is it given in the finding of

the court. Even were it claimed, it would not apply
here, as the law in this state clearly and unequivocally
is, that sheriffs' sales under execution, of the interest
of the execution debtor, will not be enjoined at the suit
of a third person, on the ground that it is his land that
the sheriff is about to sell and not the defendant's in the
execution, nor for the reason that a cloud will be thereby
cast upon the title. *Witthaus v. Bank*, 18 Mo. App.
181 ; *Kuhn v. McNeil*, 47 Mo. 389 ; *Drake v. Jones*, 27
Mo. 428. The evidence does not show an agreement to
convey ; nor do the receipts set out such agreement, nor
are they effective as a purchase and sale. The receipts
moreover call, if they do call, for half of an undivided
fifth. Which half ? Which fifth ? Where located ?
Plaintiffs, therefore, had no equity for specific perform-
ance. The case is within the statute of frauds. *Whaley
v. Hinchman*, 22 Mo. App. 483 ; *Scarrit v. Church*, 7
Mo. App. 174 ; *Schroeder v. Taaffe*, 11 Mo. App. 267 ;
*King v. Wood*, 7 Mo. 389 ; *Ivory v. Murphy*, 36 Mo.
541 ; *Springer v. Kleinsorge*, 83 Mo. 153. The plain-
tiffs did nothing under their alleged purchase. There
must be some part performance—some substantial change
in the situation of the parties. Browne Stat. Frauds,
secs. 448, 448*a*, 452 ; *Williams v. Morris*, 95 U. S. 444 ;
*Townsend v. Hawkins*, 45 Mo. 286. The Supreme
Court of Missouri still adhere to the doctrine that a third
party cannot interfere with a sale of another's interest
or right. *Wilcox v. Walker*, 13 West. Rep. 263.

JOSEPH J. WILLIAMS, for the respondents : When
the judgment was rendered against William M. Parks,
the legal title resided in him, plaintiffs being the equita-
ble owners. A sale under an execution issued on the
judgment, at any time during the continuance of the
lien, and sheriff's deed would pass the legal title to
the execution purchaser, which would take effect, by rela-
tion, as of the date of the judgment lien, and defeat
the legal title acquired by plaintiffs by their deeds of
date January 8, 1887. Injunction was the appropriate

and only remedy.   1 High on Inj. [ 2 Ed.] sec. 369 ; *Orr v. Orr*, 3 J. J. Marsh. 269.   The contract is sufficiently definite.   Its sufficiency is not questioned by the answer. Browne on Statute of Frauds [ 4 Ed.] sec. 385.

ROMBAUER, P. J., delivered the opinion of the court.

This is a bill in equity seeking to restrain the defendant bank, a judgment creditor of Wm. M. Parks, from causing its judgment and execution to be enforced against certain lands formerly the property of said Parks and now the property of the plaintiffs.

The plaintiffs state in their petition that in March, 1885, Wm. M. Parks sold to them for a valuable consideration his interest in certain lands inherited from his father, and at that time executed and delivered to them memoranda of the sale, but made no formal conveyances of the land until January, 1887; that the defendant bank, in September, 1886, recovered a judgment against Parks and caused an execution to be issued thereon which the defendant sheriff under its direction levied upon Parks' interest in said lands, although he had no interest therein, threatening to sell the same and thereby subject plaintiffs to a multiplicity of suits.   The plaintiffs pray that the bank be restrained from selling the lands under said execution or any execution which might thereafter be issued on such judgment.

The defendants appeared and took issue by answer. They admit that the lands levied on are the lands described in plaintiffs' petition, and were inherited by Wm. M. Parks from his father.   They claim that the lien of the bank's judgment attached to said lands prior to the acquisition by plaintiffs of any legal interest therein, and aver that at and before the rendition of said judgment Wm. M. Parks was the legal owner thereof, and if the plaintiffs had any equitable rights or claims against it such claim was unknown to the officers of the bank prior to the filing of the petition herein.   The answer states that the sale averred in the petition from

Parks to plaintiffs was a mere pretense, that the memoranda were executed after the judgment was rendered, and that no money or other valuable consideration was ever paid to Parks by the plaintiffs for said lands. The answer sets up some facts by way of estoppel which it is unnecessary to notice, since they were denied by reply, and no evidence was offered in their support.

The court granted a restraining order upon the filing of the petition and upon the final hearing made the injunction perpetual as prayed for, awarding against plaintiffs all the costs which were caused by the levy of the execution and the advertisement of the lands for sale. From this decree the defendants appeal, and assign for error that there is no equity in the bill and that the evidence does not support the decree.

It has been decided at an early day in this state "that under our system of laws and the practice in reference to execution sales it would be unwise and create great confusion in the administration of justice to permit sales under execution to be enjoined on the ground that they will pass no title, and might cast a cloud on the title of the true owner." *Drake v. Jones*, 27 Mo. 433. The ground upon which the decision was put was that a proceeding by injunction ought not to be substituted for an action of ejectment, when in fact no real controversy might arise after the sale. This ruling was followed in *Kuhn v. McNeil*, 47 Mo. 389, and was approvingly cited in *McPike v. Pen*, 51 Mo. 63. It was extended even to sales under deeds of trust where the title was matter of record, on the ground that the plaintiff has a complete and adequate remedy at law against any claim that might be asserted by the purchaser in the courts by virtue of any title he may acquire at such sale and which he must take with notice of plaintiff's record title.

On the other hand it has been held that the sheriff will be enjoined from the sale of land for nonpayment of taxes although the assessment be illegal, when a cloud will thereby be thrown upon the title. *Lockwood v. St.*

*Louis*, 24 Mo. 20 ; *Fowler v. St. Joseph*, 37 Mo. 228 ; *Leslie v. St. Louis*, 47 Mo. 474 ; *McPike v. Pen*, 51 Mo. 63. And the same rule was applied to sales under deeds of trust in *Vogel v. Montgomery*, 54 Mo. 577, and *Matthews v. Skinker*, 62 Mo. 329.

It is difficult to reconcile the cases in this state on the question under what circumstances a sale will be restrained in equity on the ground that it will cast a cloud upon the plaintiff's title, but it may be conceded that where the plaintiff has a full and adequate remedy at law in defending against an action of ejectment, the courts will not enjoin a sale under execution on the ground that the defendant in the execution has no title in the land vendible on execution. The cases of *Drake v. Jones*, and *Kuhn v. McNiel*, *supra*, go no further than this ; and we may concede that, under these decisions, if the mere effect of a sale in this cause would have been to cast a cloud upon the legal title of plaintiffs, their bill should have been dismissed for want of equity.

But the case of plaintiffs is different. At the date of the recovery of this judgment the legal title to the land was in the execution debtor, and the lien of that judgment at once attached to such title. If the legal title, at that date, had passed out of the debtor his grantees, even though their deed were unrecorded, could, by recording their deed prior to the execution sale, have acquired a valid legal title against the purchaser at the execution sale. *Davis v. Owenby*, 14 Mo. 170 ; *Valentine v. Havener*, 20 Mo. 133 ; *Potter v. McDowell*, 43 Mo. 93 ; *Reed v. Ownby*, 44 Mo. 204 ; *Black v. Long*, 60 Mo. 181. But such would not be the effect of an acquisition of the legal title by them subsequent to the recovery of the judgment.

While under our practice a defendant in ejectment may defend upon the strength of an equitable title (*Valle v. Fleming*, 29 Mo. 152 ; *Shroyer v. Nickell*, 55 Mo. 264 ; *Jones v. Manly*, 58 Mo. 559 ; *Harrington v. Fortner*, 58 Mo. 468 ; *Carter v. Prior*, 78 Mo. 222), it is,

to say the least, doubtful how far he could successfully defend upon the strength of a mere equitable right against a purchaser at the execution sale buying without notice.

These considerations lead us to the conclusion that the plaintiffs by their petition show themselves entitled to equitable relief.

But even if we were mistaken in this view, and even if the petition, under the ruling in *Kuhn v. McNiel*, *supra*, were demurrable, we would not feel warranted to reverse the judgment on that ground alone. No demurrer was interposed. The defendant went to trial upon the facts, and the plaintiffs having substantiated the facts by evidence, the defendant now claims that a trial upon the facts was erroneous and unwarranted. The Supreme Court has repeatedly decided that when a correct result is reached, although the proceedings were had upon an erroneous theory and irregular, the judgment should not be reversed. *Conley v. Doyle*, 50 Mo. 234, 235 ; *Mississippi River Bridge Company v. Ring*, 58 Mo. 491, 495.

Assuming that the plaintiffs might defend successfully in an action of ejectment if the sale were not enjoined, their defence would be purely equitable. Their defence would have to be tried before the same tribunal which passed upon their cause of action in this proceeding and upon the identical facts which were passed upon by the judge in rendering this decree. As it may reasonably be assumed that the court would come to no other conclusion upon such retrial, the only result of reversing this decree and remitting the parties to their action at law would be a multiplication of suits and costs without substantial benefit to any one. This, in our opinion, should be done in no case.

The memorandum referred to in plaintiffs' petition and offered in evidence is in the following words : .

"March 10, '85. Crystal City, Mo.

"Received of Charles H. Parks the sum of four

hundred dollars for one-half of my undivided one-fifth interest, or half of all my real estate left to me by my father.

"Wm. M. Parks."

It will be noticed that the defendant's answer admits that the lands levied on are the lands described in plaintiff's petition and were inherited by Wm. M. Parks from his father. When the memoranda were offered in evidence the only objection made to them by defendants was, that they were irrelevant and incompetent as evidence and that they could not be read in evidence to affect defendants. Defendants now contend that the memoranda are *too* indefinite as memoranda of written agreements under the statute of frauds. We will discuss the question thus raised as if saved by a sufficient objection. The Supreme Court of the United States, in *Williams v. Morris*, 95 U. S. 444, gives this succinct definition of a sufficient memorandum : "Any note or memorandum in writing which furnishes evidence of a complete and practicable agreement is sufficient under the statute, and parol evidence is admissible to explain latent ambiguities, and to apply the instrument to the subject-matter," but "unless the essential terms of the sale can be ascertained from the writing itself or by reference in it to something else, the writing is not a compliance with the statute, and if the agreement be thus defective it cannot be supplied by parol proof, for that would at once introduce all the mischiefs which the statute was intended to prevent."

The writing may be sufficient, however informal. A letter, a receipt for money, a bill of parcels, or a stated account in which the vendor of land charges himself with the price, is sufficient under the statute, provided, it is signed by the party to be charged, or his duly authorized agent, and is sufficiently definite in its terms so as to be capable of specific enforcement. Browne Stat. of Frauds, sec. 346.

In this case, there is no patent ambiguity in the

memorandum. The lands left by his father to Wm. M. Parks are the lands inherited by him from his father. There can be no possible misunderstanding on that subject. The subject-matter of the sale may always be identified by reference to an external standard, and need not be in terms explained. Thus the description as the vendor's right in a particular estate, or as the property which the vendor at another time had purchased from a particular party, has been held sufficient. *Nichols v. Johnson*, 10 Conn. 192, 199 ; *Phillips v. Hooker*, Phil. [N. C. Eq.] 193, 197.

Judged by the above standard, the memoranda were sufficient evidence of a sale under the statute of frauds. That they were executed at the time when they purport to bear date, and that the sales were made for a valuable consideration is established by the evidence, and a careful perusal of the record satisfies us, in no way shaken by evidence furnished by the surrounding circumstances. That transactions of this kind should be closely scrutinized we all concede, but that furnishes no ground to vacate them for fraud on bare suspicion.

It results that the equity in plaintiffs' bill is supported by the evidence, and that there is no error in the decree.

Judgment affirmed. PEERS, J., concurs ; THOMPSON, J., dissents.

THOMPSON, J., delivered a dissenting opinion.

I dissent from the opinion which has been delivered in this case, on the ground that it is contrary to the decisions of the Supreme Court in *Drake v. Jones*, 27 Mo. 428, and *Kuhn v. McNeil*, 47 Mo. 389 (followed by this court in *Witthaus v. Washington Sav. Bank*, 18 Mo. App. 181, 184), where it was held that a suit cannot be prosecuted for an injunction to restrain the sale of land under an execution, on the ground that such a sale will pass no title and will cast a cloud on the title of the real owner. I see nothing to take this case out of the rule. If the plaintiffs have such a title as is available

to them in equity, then they have such a title as will support a defence in an action of ejectment. This is shown by the following decisions : *Tibeau v. Tibeau,* 19 Mo. 78 ; *Harris v. Vinyard,* 42 Mo. 568 ; *Hayden v. Stewart,* 27 Mo. 286 ; *Baker v. Nall,* 59 Mo. 265 ; *Valle v. Fleming,* 29 Mo. 152 ; *Shroyer v. Nickell,* 55 Mo. 265 ; *Jones v. Manly,* 58 Mo. 559 ; *Le Beau v. Armitage,* 56 Mo. 191 ; *Harrington v. Fortner,* 58 Mo. 468 ; *Evans v. Snyder,* 64 Mo. 516 ; *Sims v. Gray,* 66 Mo. 613 ; *Collins v. Rogers,* 63 Mo. 515 ; *Long v. Joplin Co.,* 68 Mo. 422. It is, therefore, not necessary to the safety of their title that the ordinary course of justice should be disturbed by the remedy which they now seek.

Aside from this, their position is not one which entitles them to be favored in a court of equity. There is much reason to believe that the bank may have given the credit upon the faith of William M. Parks being the owner of the interest in the land in controversy which, fifteen months before, according to his testimony, he had transferred by a secret bargain, to his brother and sister, these plaintiffs. This will appear from the following brief statement of facts : On March 10, 1885, according to the evidence adduced in behalf of the plaintiffs, they each purchased, for the sum of four hundred dollars, of their brother, William M. Parks, one-half of his interest in the real estate descending to him from their deceased father. They each took written receipts therefor, specifying the nature of the transaction with sufficient definiteness to make a contract good within the statute of frauds, as my brethren in their opinion find, with which conclusion I agree. When this contract was taken they had made full payment of the agreed purchase price to him, and were entitled to deeds of purchase. They did not demand such deeds, although they might have had them if they had demanded them. The reason why they did not demand and receive them was that they regarded it as a family matter and thought that it was important only to themselves. They thus allowed the

legal title to the interest in the land which they had purchased to remain in their brother and vendor, Wm. M. Parks, until the seventh of January, 1887, and allowed him to hold himself out to the world as the owner of this interest in his deceased father's estate and to obtain credit on the faith of such ownership. This sufficiently appears from his own testimony, as follows, and there is no countervailing testimony in the record: "I signed the note on which the bank got judgment. It is dated June 10, 1886. * * * The record showed that I owned this property [meaning the interest in the land here in controversy]. It stood in my name on the records. I never told the bank I did not own any real estate, that I had sold it." If the bank gave the credit on the faith of Wm. M. Parks being the owner of this property, then the plaintiffs would, by reason of their negligence, be estopped from setting up their equitable title as against the bank or the purchaser at execution sale, under the decision of this court in *Haskell v. Whyte*, 11 Mo. App. 585, which decision stands unreversed, and, so far as I know, has not been overruled. I am not prepared to say that in the absence of more distinct evidence to the effect that the bank did extend the credit on the faith of Wm. M. Parks being the owner of this property, there is evidence which could estop the plaintiffs from setting up their equitable title as a defence to an action of ejectment. I understand it to be an elementary principle that equity exerts its extraordinary powers in favor of the diligent. But here these plaintiffs come into court with no better title to a mode of relief which wrests the process of the law out of its ordinary course, than their own gross negligence in not taking and putting upon the records the deed which they might have had, at the time when, according to their evidence, the sale of the land to them was made, which fact, if done, would probably have prevented this credit from being given. Negligence will not always bar equitable relief; but it ought to bar such relief where there is ground for believing that the

party against whom the relief is sought may have been prejudiced by it.

Nearly all the cases of fraudulent conveyances which have come before me since I have been a judge of this court, have taken the form of secret family shuffles of which the public were in no way apprised. In respect of personal property, such conveyances would be void under our statute of frauds. Our registration law does not extend its protection to subsequent creditors ; but the public records of land titles afford means to which creditors constantly resort for information as to the standing of those who seek credit from them, and under such conceptions of equity as would afford relief in this case, the recording acts, intended for the protection of subsequent purchasers, become an instrument of fraud against subsequent creditors.

It is true, as stated in the opinion of my learned brethren, in this case, that numerous decisions in this state settle the principle that a *bona-fide* purchaser of land, who has failed to record his deed until after a judgment has been recovered against his vendor, but who records it prior to sale under the judgment, can hold it against a purchaser under the judgment. *Fox v. Hall,* 74 Mo. 316, and cases cited. But the difficulty with the case of the plaintiffs is, that they *had no deed* at the time when the judgment was recovered against their vendor and at the time when the lien of that judgment attached to their vendor's interest in the land. They now seek to have the aid of a court of equity to give them a *better position* than this rule of the law gives them, and on the ground that equity follows the law. Equity indeed follows the law, but it does not go beyond the law when to do so is contrary to justice.

I am of opinion that this judgment should be reversed and the suit dismissed.